**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0724n.06

Case No. 20-3395

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KAREN LEISRING, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| CLERK OF HAMILTON COUNTY MUNICIPAL | ) | DISTRICT OF OHIO |
| COURT; HAMILTON COUNTY CLERK OF | ) | |
| COURTS, | ) | |
| | ) | |
| Defendants-Appellees. | ) | **O P I N I O N** |

**FILED**
Dec 30, 2020
DEBORAH S. HUNT, Clerk

BEFORE: SUTTON, BUSH, and MURPHY, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** When Karen Leisring's employer, the Hamilton County Clerk of Courts, declined to promote her to a supervisor position, she believed that only age discrimination could explain its decision. So she sued, alleging violations of the Age Discrimination in Employment Act and a similar Ohio law. But she has failed to produce evidence to confirm her belief. We therefore affirm the district court's grant of summary judgment to the Clerk of Courts.

**BACKGROUND**

In 2018, the Supervisor of the Case Management Division position opened up at the Hamilton County Clerk of Court's office. To fill it, the Clerk's Office circulated an email to all staff to inform them of the job requirements and encourage qualified candidates to apply. If an

applicant met the stated job requirements, the Chief of Human Resources, Shonda Sullivan, sent them a set of written questions. Then, after the applicant answered the written questions and provided a resume, the hiring panel reviewed the applications to choose candidates to interview. The panel consisted of Jesslina Isom, the Assistant Chief of the Civil Division; David Sturkey, the Chief of the Municipal Division; and Sullivan. The panelists prepared a set of written questions for the interviews and read each question verbatim to ensure consistency. After the panelists completed all four interviews, they created a scoring rubric that associated certain criteria with specific questions. In their system, a lower score meant a better performance.

When the panel finished scoring the interviews, Sarah Buller (age 54) emerged as the clear frontrunner with a score of 26.5. But she indicated that she was not really interested in moving to the Case Management Division, so the panel passed over her. After Buller came Catherine Smith (age 28), with a 31.3, and Leisring (age 67), who received a 34.8. Because of the small spread between the candidates, the panel met over the next several days and left the ultimate decision to Isom. Isom "relied on the scoring chart" and chose Smith.

Leisring sued, alleging unlawful age discrimination under the Age Discrimination in Employment Act and Ohio Revenue Code § 4112.14. After discovery, the district court granted the Clerk's Office's motion for summary judgment.

## DISCUSSION

We review the district court's decision to grant summary judgment de novo. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020). To defeat summary judgment, Leisring needed to show a genuine dispute of material fact that, if resolved in her favor, could persuade a reasonable juror that age was the but-for cause of the Clerk's Office's decision to

choose Smith over her. *Id.* at 887–88.[1] At this point, the parties dispute only one issue: whether the Clerk's Office's explanation of its hiring decision was pretextual. The Clerk's Office explained that it chose Smith over Leisring because Leisring gave a poor interview, in which she failed to demonstrate the traits the new Clerk of Courts sought in leaders—namely, the drive to bring about organizational change and professionalize and modernize the office. The interviewing panel said it had the opposite experience with Smith, finding her interview compelling and coming away convinced that she had the kind of forward-looking ideas it sought. Leisring must show that explanation was really a pretext for age discrimination.

Pretext is "a commonsense inquiry: did the employer [decline to promote] the employee for the stated reason or not?" *Id.* at 888 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). Leisring offers three reasons for her belief that her interview performance did not justify choosing Smith over her. First, she argues that she is so much more qualified than Smith that only discrimination can explain the Clerk's Office's choice. Second, she argues that Sullivan was biased and slanted the whole process to favor Smith. And third, she argues that interviews are inherently subjective and that one of the interview questions showed the interviewers' focus on finding a young candidate.

*1. Qualifications.* A plaintiff faces a heavy burden to establish pretext based on qualifications evidence. When there is little other evidence of discrimination, a plaintiff must show that her qualifications were "so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006). A plaintiff's subjective belief that she is

---

[1] Age discrimination claims under Ohio law are analyzed under the same standards as ADEA claims, so we do not separate the analysis.

more qualified does not, of course, suffice to show pretext. *Stokes v. Detroit Pub. Schs.*, 807 F. App'x 493, 502 (6th Cir. 2020).

Here, Leisring contends that her twenty years of experience in human resources and personnel administration before joining the Clerk's Office and her strong performance in her non-management position in the Case Management Division, when compared to Smith's more limited work experience, made her "undeniably the superior candidate." Leisring certainly had more experience than Smith. But more years does not automatically mean more qualified. *See id.* at 502. During Leisring's time as a supervisor in private industry, where she never managed more than a few subordinates at a time, and she could not say that she had the authority to hire, fire, or discipline those subordinates without seeking approval from her supervisors. Smith, by contrast, supervised seventeen employees as the general manager of a hotel and had the authority to hire, fire, and evaluate them.

Leisring also points to her strong performance in the Clerk's Office and especially to the period when she believed herself to be interim supervisor.[2] But the panel concluded that Smith was also competent in using the case-management software and displayed sufficient knowledge of the Civil Division's processes. So Leisring's strong performance does not meaningfully separate the two. That is especially true because, as the district court put it, "[j]ust as not every player makes a great coach[,] not every exceptional front-line worker makes an exceptional manager." What's more, Smith had far more experience working with judges, another of the job's requirements.

---

[2] The parties dispute whether Leisring actually was interim supervisor. At this stage, we must credit her testimony that she was. But we must also give force to her testimony that she did not know all the supervisory duties the position entailed and that her experience consisted mostly of taking on a greater portion of the work that she and the prior supervisor already shared.

Finally, Leisring points to the fact that the outgoing supervisor recommended her for the position. But Sullivan explained that "it's general practice of the clerk's office that historically everyone was recommended for everything." That testimony is borne out by the fact that Smith's department head recommended her for the job as well. So both had recommendations from their respective supervisors; that Leisring's supervisor happened to be the outgoing holder of the position in question does not give his recommendation so much more weight that the panel's decision to disregard it is evidence of pretext.

Taking Leisring and Smith's qualifications together, we cannot conclude that "no reasonable employer would have chosen [Smith] over [Leisring]." *Bender*, 455 F.3d at 627.

*2. Preselection.* Evidence that a hiring committee preselected another candidate can discredit an employer's proffered explanation for its employment decision. *Stokes*, 807 F. App'x at 503. In *Stokes*, for example, emails between members of a hiring committee saying that a candidate "would be offered" the position before the interviews even began sufficed to defeat summary judgment. *Id.* Leisring offers no such evidence of preselection.

Instead, she theorizes that Sullivan slanted the process in Smith's favor because: (1) she invited Smith to leadership development meetings but did not invite Leisring; (2) she gave Smith the only "high pass" rating during the pre-interview screening; and (3) she recommended that Isom—who made the ultimate decision—pick the better "long-term" leader. The facts Leisring presents cannot support the weight she puts on them.

As for the leadership-development meetings, Sullivan explained that she invited the three people to attend them based on a demonstrated interest in ascending to leadership roles at the Clerk's Office. Leisring offers no evidence that she had shown such interest. And Leisring's

argument that Sullivan excluded her based on age is further weakened by the fact that Sullivan invited Buller, who was then in her mid-fifties.

Leisring's focus on the pre-interview-screening ratings is equally unconvincing. In evaluating the candidates' resumes and responses to written questions, Sullivan rated them "high pass" or "low pass." Only Smith received a high pass. But there is no evidence that Sullivan shared those ratings with the other two panel members. And Buller, who received a low pass, ended up the clear frontrunner until she decided she was not ready to move to Case Management. So the fact that Sullivan, based on her experiences with Smith, Smith's resume, and Smith's responses to written questions, noted to herself that she thought Smith was the strongest candidate does not raise an inference of age discrimination.

Sullivan's recommendation, prior to the three panelists' discussions of the candidates, that Isom pick the best "long-term" leader also fails to raise an inference of age discrimination. The ADEA does not prohibit employers from thinking long term; it bars assuming that an older employee would not be willing to commit to making long-term contributions. Nothing in the record indicates that the panelists made that discriminatory assumption. Indeed, Sturkey said that Leisring's willingness to stay for three years was a sufficiently long-term commitment to the role in his eyes.

*3. The interview.* Finally, Leisring argues that we should not credit the Clerk's Office's explanation that she lost the job in the interview because evaluating an interview is an "inherently subjective determination." *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 394 (6th Cir. 2008). But that does not mean that employers cannot rely on a poor interview performance to decline to hire a candidate. *See Stokes*, 807 F. App'x at 501; *Davis v. Cintas Corp.*, 717 F.3d 476,

492 (6th Cir. 2013); *Briggs v. Potter*, 463 F.3d 507, 516 (6th Cir. 2006). Here, too, Leisring fails to show that she can meet her burden of persuasion to prove pretext.

The panelists testified that Leisring came to the interview "thinking that she was going to get [the job], that she was entitled to it and didn't take the interview process seriously." Perhaps because she felt the outcome was a foregone conclusion, she was not prepared to discuss changes she would make to improve the Case Management Division. Even when the panel directly asked Leisring what improvements she would make to the office, she failed to offer a vision for change. For a panel who sought a leader who would innovate and make changes, Leisring's comfort with the status quo proved her undoing. It contributed to her receiving a score that was 3.5 points worse than Smith's on the panel's uniform scoring system.

In response to her lower score, Leisring points to a single question that she believes shows intent to discriminate on the basis of age. Question eighteen asked "how long do you see yourself committed to this role?" As with all the questions, every candidate, from the twenty-eight-year-old Smith to the sixty-seven-year-old Leisring had to answer it. And employers can inquire into applicants' commitment to a job without intending to discriminate against older applicants. That Leisring may have interpreted the inquiry as asking about her retirement plans does not alter the query's reasonableness.

In short, the Clerk's Office says that Leisring was a strong candidate on paper who gave a bad interview, so she did not get the job. That explanation is reasonable and age-neutral, placing the burden on Leisring to show it is a cover for the age discrimination that truly motivated the Clerk's Office's decision. She fails to meet that burden, presenting no evidence that calls the Clerk's Office's narrative into question or raises an inference of discrimination. Thus, we affirm the district court's grant of summary judgment.